BLUME, KISSINGER v. STATE OF INDIANA.

[No. 30,101. Filed April 18, 1963. Rehearing denied June 24, 1963.]

*Robert L. Dalmbert,* and *Robert L. Stevenson,* both of Columbus, for appellants.

*Edwin K. Steers,* Attorney General and *William D. Ruckelshaus,* Deputy Attorney General, for appellee.

LANDIS, J.—Appellants were charged by affidavit with the crimes of safe burglary and automobile

banditry. After a trial by jury appellants were found guilty of safe burglary and sentenced to the Indiana State Prison for a term of five to ten years. They appeal from the judgment.

Appellants first contend the court below erred in overruling appellant Blume's motion for continuance filed five days prior to the trial. The motion signed by appellant Blume's attorney alleged in part:

> "3. That on the 31st day of December, 1960, he was informed by the duly elected Prosecuting Attorney of Bartholomew County, that said Prosecuting Attorney was considering filing a motion for change of venue from the County in said cause and that in any event, said Prosecuting Attorney informed him that said cause would not be tried January 9, 1961, that being the date upon which said cause was set for trial.
> "4. That in reliance upon said statements of said Prosecuting Attorney, this affiant informed his client that said cause would not be tried and did not proceed further with preparation of said case.
> "5. That said statements by said Prosecuting Attorney were false, misleading and have resulted in denying this affiant the opportunity to prepare sufficiently for said trial.
> "6. That there is not now sufficient time for said affiant to adequately prepare a defense in said cause.
> "WHEREFORE, said affiant prays the Court that said affidavit be sustained and said cause continued.
>                    /s/  Robert L. Dalmbert"

At the outset it is unnecessary for us to consider whether both appellants may predicate error on the overruling of the affidavit for continuance filed by appellant Blume, in view of the result we have reached in this case.

Appellants concede that the granting of continuances in cases such as this is not governed by statute but

is addressed to the sound discretion of the trial court.[1]
It is contended this discretion was abused by the court
in the instant case for the reason that appellant's
counsel did not have sufficient time to prepare for
trial citing: *Petro* v. *State* (1933), 204 Ind. 401, 409,
184, N. E. 710, 712, and *Powell* v. *Alabama* (1932),
287 U. S. 45, 71, 53 S. Ct. 55, 65, 77 L. Ed. 158,
171, 84 A. L. R. 527.

In the case before us it is undisputed that appellants
had counsel of record for some eight months prior to
the trial and appellants predicate their right to a con-
tinuance on the basis of the statement by the prosecut-
ing attorney on the 31st day of December, 1960, that
the letter " . . . was considering filing a motion for
change of venue from the County . . . and that in any
event . . . said cause would not be tried January 9,
1961, that being the date upon which said cause was
set for trial."

It is well settled that an affidavit for continuance
must set out all of the facts to support the applica-
tion. 8 I. L. E., Criminal Law, §344, p. 402.
This requirement contemplates a plain con-
sistent statement of facts, not conclusions, which
clearly state the grounds or show sufficient excuse for
the delay requested. *Conrad* v. *The State* (1896), 144
Ind. 290, 294, 43 N. E. 221, 222; *Ransbottom* v. *The
State* (1896), 144 Ind. 250, 254, 43 N. E. 218, 220.

---

1. It is of course well settled that under Burns' §9-1401
(1956 Repl), an accused who files a legally sufficient affidavit
for continuance on account of the absence of witness has an
absolute right to such continuance in the event the prose-
cuting attorney refuses to admit all the material and relevant
facts the accused alleged he could prove by the absent wit-
ness. (Acts 1905, ch. 169, §218, p. 584; 1927, ch. 132, §11,
p. 411; 1937, ch. 123, §1, p. 702). See: *Torphy* v. *State* (1919),
188 Ind. 30, 121 N. E. 659; *Connors* v. *State* (1915), 183 Ind.
618, 109 N. E. 757.

In the Conrad case above cited an affidavit for continuance on the ground of appellant's sickness which allegedly had prevented a proper preparation for his trial was held not sufficiently established by a showing that on the 4th day of January, 1895, appellant was required to remain indoors while under treatment. In such case the trial had been set for January 21st and there was no showing how long appellant's condition required him to be confined indoors.

In *Ransbottom* v. *The State* (1896), *supra*, 144 Ind. 250, 255, 43 N. E. 218, 220, an affidavit for continuance alleging appellant could not learn the whereabouts of a witness in time to send a subpoena to Grant County was similarly held insufficient for failing to state the facts as to what appellant did when he first learned the witness was in said Grant County. The court could properly have drawn a conclusion as to such matter if appellant had alleged the necessary facts.

The affidavit for continuance in the instant case after alleging the prosecuting attorney was considering taking a change of venue from the county[2] and that the cause would not be tried on January 9, 1961, states:

---

2. It is elementary that there is no provision in the law in Indiana authorizing the prosecuting attorney or the State of Indiana to take a change of venue from the county in a criminal case. Art. 1, §13 of the Constitution of Indiana provides:

"Rights of accused.—In all criminal prosecutions, the *accused shall have the right to a* public *trial,* by an impartial jury, *in the county in which the offense shall have been committed; . . .*" (Italics added.)

The Indiana Statute on change of venue from the county in criminal cases makes no provision for such a change by the State (see Burns' §§9-1301, 9-1305[Acts 1927, ch. 132, §10, p. 411; Acts 1905, ch. 169, §207, p. 584], and no such provision could be made in view of Art. 1, §13 above.

"That there is not now [6 days before trial] sufficient time for said affiant to adequately prepare a defense in said cause."

No facts are averred as the basis for this conclusion, such as the location of appellant's witnesses, and what had been done to procure them, or what previous engagements appellant's counsel had in other trials or otherwise that would make it impossible to prepare adequately a defense, as alleged.

However, on the contrary as previously stated, it is undisputed that appellants in this case each had counsel of record for some eight months prior to trial, and no showing has been made that there was not an abundance of time for preparation.

It follows from the failure of appellants to allege facts in the affidavit for continuance to show sufficient cause for the delay requested, we must conclude the court below did not abuse its discretion in overruling the continuance in this case.

We now pass on to a consideration of appellants' second contention on this appeal which is that the court erred in overruling appellants' motion for a directed verdict or for discharge of the jury at the close of the State's first opening statement.

Appellants here make reference to the deputy prosecutor's first opening statement which stated only:

"... these defendants were caught red-handed and they were in a room at the American Legion attempting to open a safe. There was a 1952 Nash automobile near the premises ... in which the Defendants intended to escape. This happened at the American Legion Post Number 24 located at 1016 Washington Street in Columbus, Indiana."

Appellants cite Burns' §9-1805 (1956 Repl.), which provides that:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

"First. *The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it,* and the defendant may then state his defense and briefly the evidence he expects to offer in support thereof." (Italics added.) Acts 1905, ch. 169, §260, p. 584; 1909, ch. 96, §1, p. 257; 1927, ch. 132, §14, p. 411.

The trial court overruled appellants' motion for a directed verdict or for discharge at the close of the State's first opening statement and permitted the deputy prosecutor to make a second opening statement as follows:

"The State will prove that the Defendants unlawfully, feloniously and burglariously tried to open the upstairs window on the North side of the building at the head of the staircase. It was night time when they did that. That the building is located at Columbus Post No. 24, 1016 Washington Street and designated as the American Legion Post No. 24, Columbus, Indiana. We will do that through witnesses.

"We will also show that the building is situated on the premises located at 1016 Washington Street, which is owned by the American Legion Post No. 24, Columbus, Indiana. We will show that at the time the Defendants entered the building they intended to take, steal and carry away money, goods and valuables of the American Legion Post No. 24, Columbus, Indiana.

"We will show that while in the building the Defendants located the safe and that they attempted by the use of a saw, hammer and screw driver to force that safe open so that they could get whatever valuables were inside of the American Legion Post No. 24, Department of Indiana, Columbus, Indiana. Our evidence will, however, show that their efforts fell short of complete success in getting the goods out because they were caught by members of the Sheriff's Depart-

ment . . . and members of the Indiana State Police before they managed to get the door of the safe opened. I will point out in connection therewith that the laws of the State defines safe burglary not only as breaking into the safe, but attempting to break into the safe so that the crime is completely consumated [sic] even though their efforts fell short of breaking into the safe and they didn't get any valuables out of the safe. Nevertheless, according to the law in Indiana a crime was committed when they were attempting to break into the safe which was by the means described. We will show that this did not occur until after the American Legion was closed up on the night of May 6th, rather on the morning of May 7th. Our evidence will show that it was at approximately 2:00 o'clock A.M. when the American Legion closed and that these burglars broke in within the next half hour to an hour and a half after that.

"Our evidence will further show that the automobile which I described before was parked by the defendants on Jackson Street which is West of the American Legion and was parked there for the purpose of escaping once they had accomplished their criminal acts inside of the American Legion building. Our evidence will show that all of this happened in Bartholomew County, in the State of Indiana."

The appellants after the completion of the second opening statement by the State made motion to set aside the submission of the case and to discharge the jury, which was overruled.

It is, of course, true that the opening statement of the prosecuting attorney in a criminal case is intended to inform the jury concerning the questions of fact involved in the case, so as to prepare their minds for the evidence to be heard. *Bolden* v. *State* (1927), 199 Ind. 160, 163, 155 N. E. 824, 825; 23A. C. J. S., Criminal Law, §1085, p. 97.

The opening statement has also the further purpose of informing the accused of the contemplated course of the prosecution, so as to enable him to meet the charge against him. 23A C. J. S., Criminal Law, *supra*, §1085, p. 98.

It has long been the law in Indiana and elsewhere that the scope of an opening statement will rest largely in the discretion of the trial court and the cause will not be reversed unless there has been a clear abuse of such discretion. *Reynolds* v. *The State* (1897), 147 Ind. 3, 5, 46 N. E. 31, 32; *State* v. *Feger* (1960), (Missouri), 340 S. W. 2d 716, 724; 23A C. J. S., Criminal Law, *supra*, §1085, p. 99; Ewbanks' Crim. Law, §356, p. 214.

Without passing on the propriety of the remedy of a motion for directed verdict at the close of the opening statement (which has not to our knowledge been approved by the decisions of this state), we are unable in the case before us to learn in what respect appellants were prejudiced by the allegedly inadequate opening statement by the deputy prosecutor. When appellants indicated they were aggrieved and made motion for a directed verdict or discharge, the trial court attempted to cure any error by allowing a second and more adequate opening statement to be made. The record is silent as to any further objection by the appellants *until after the second opening statement was completed,* at which time appellants moved to set aside the submission and discharge the jury alleging they had been prejudiced by the State making two opening statements instead of one as provided by statute. This motion was overruled.

We do not believe appellants could properly sit by and permit the State to make a second opening

statement without objection, and then after its conclusion raise for the first time the question of the right of the State to make this statement. This is similar to the rule of law that requires a person objecting to the admission of evidence to make his objection before the evidence is admitted. See: *Parker* v. *State* (1925), 196 Ind. 534, 541, 149 N. E. 59, 61; *Ginn* v. *State* (1903), 161 Ind. 292, 294, 68 N. E. 294; 8 I. L. E., Criminal Law, §371, p. 420, note 7. The failure of appellants to object to the right of the State to make a second opening statement until after its completion, in our judgment waived any question as to whether the court should have permitted it to be made.

Appellants' final contention relates to the admission into evidence over appellants' objection of certain tools and implements not mentioned in the affidavit but which were found lying on the floor of the storage room of the American Legion Club a short distance from the safe which was allegedly burglarized.

The affidavit for safe burglary upon which appellants were convicted charged in part that the appellants,

" . . . did then and there in said building aforesaid unlawfully, feloniously and burglariously open and attempt to open a safe *by the use of a saw, a hammer and a screw driver,* then and there being contrary . . . ." (Italics added.)

Appellants contend in their briefs on appeal that it was error for the court to receive in evidence over their objections the following items found at the scene of the burglary but not mentioned in the affidavit, viz:  three pairs of gloves, a pipe wrench, a claw bar, a crowbar, a pry bar, an electric drill, a saw handle, a flashlight, drill bits, a saw blade, punches and chisels,

wire clippers, goggles, a wedge, two blue zipper bags, and a photograph of tools, bags and gloves.

However, an examination of the objections made by appellants' counsel in the trial court at the time of the admission of such exhibits reveals that only one of the exhibits (State's exhibit 18, purporting to be a claw bar) was objected to for the reason that it was not a tool charged in the affidavit. No contention, however, was made that it was not found at the scene of the burglary so as to be a part of the res gestae, nor that appellants were not in possession of it, but we believe the contrary could have been inferred from the evidence as is hereinafter related.

Exhibit 17 (a pipe wrench) was objected for the reason that " . . . they [the State] haven't shown any relation . . . with this thing, to the defendants." However, the evidence showed this exhibit was found in a blue zipper bag in front of the burglarized safe at the American Legion Home on May 7, 1960. Police Sergeant Rothrock testified that at about 3:37 a.m. on said date he saw three men go to the American Legion Post from another yard and two of them were carrying handbags. He and other police officers surrounded the Legion and closed in on it. He went around the building and the other officers had three men including appellants. He went to the stockroom where the safe was located and saw various tools including screw drivers, hammers, wrenches and saws.

An accomplice of appellants who pleaded guilty to safe burglary in this case, stated he and appellants dropped off some tools (a hammer, a screw driver and a punch) at the fence of the American Legion about 7:30 or 8:00 p.m. on the evening of May 6th; that tools were carried by appellants in a bag; that two or three hours after 12:30 a.m. on May 7th they

broke into the American Legion, and then the police arrived.

Witness McMillan testified appellants came out of the room of the American Legion Post where the safe was located. He went into the storage room and picked up the tools that were in the room. There were two blue bags in front of the safe. Witness DuLong stated there were no tools on the floor when he closed the American Legion Post at 2:00 a.m. on May 7th.

To recapitulate, three men were seen going to the American Legion Post early in the morning, two of them carrying bags. Soon thereafter three men, two of them appellants, were apprehended coming out of the Legion Hall, and an immediate search of the premises revealed two bags and various tools, which had not been there before, lying next to the partially dismantled safe.

The above testimony clearly had the effect of connecting appellants with the various 24 items and exhibits objected to, particularly in the absence of any specific objections to indicate why they were not admissible as being found with appellants at the scene of the burglary so as to be a part of the res gestae.

It is the settled law that proof of the possession of tools by a defendant in a burglary case may be made by circumstantial evidence. 12 C. J. S., Burglary, §51, p. 725.

The testimony here with the inferences in support of it was sufficient, if believed, to establish that the tools and exhibits were in the possession of appellants, and once appellants are shown to be in possession of such items there could be no question as to their relevancy in this case. See: 22A C. J. S., Criminal Law, §611, p. 419, §712, p. 956;

20 Am. Jur., Evidence, §246, p. 239, §273, p. 260, §401, p. 361; 143 A. L. R. 1199.

The question of variance between pleading and proof, which is also argued by appellants on appeal, we do not believe is properly before us because of the failure of appellants to present it before the trial court.

The classic example of a variance is where it is charged the defendant stole a white horse, but the proof shows he stole a black horse. See: *McCallister* v. *State* (1940), 217 Ind. 65, 68, 26 N. E. 2d 391, 392; 52 C. J. S., Larceny, §96c (3a), note 69.

The objection to the exhibit here on the ground that "it is not a tool charged in the affidavit" was not equivalent to a contention of a variance, viz: that the State had alleged an attempt to burglarize the safe with a saw, a hammer and a screw driver, but instead had attempted to prove a burglary with some other instrument *rather than the ones charged.*

However, had the question been properly raised, it would have been unavailing to appellants as nowhere in the record or the briefs does it appear that the State did not prove that the burglary was committed by the implements mentioned in the affidavit.

We further do not believe any question is before us as to error in admitting evidence not allegedly covered by the State's opening statement in view of appellants' failure to object to the admission of such evidence for such reason at the proper time.

Judgment affirmed.

Myers, Achor and Arterburn, JJ., concur; Jackson, C. J., concurs in result.

NOTE.—Reported in 189 N. E. 2d 568.