### HENRY *v.* STATE OF INDIANA.

[No. 24,720. Filed March 10, 1925.]

1. CRIMINAL LAW.—*A cause for new trial not presented in brief is waived.*—A cause for new trial not presented as alleged error is deemed waived or abandoned. p. 16.

2. CRIMINAL LAW.—*Cross-examination of witnesses is within the discretion of the trial court.*—The extent to which cross-examination of witnesses is permitted is within the sound discretion of the trial court and only an abuse of this discretion is cause for reversal. p. 18.

3. CRIMINAL LAW.—*Cross-examination of witnesses not restricted to facts elicited in direct examination.*—The rule that the cross-examination of witnesses must be confined to the subject opened by direct examination, does not restrict such cross-examination to the specific facts developed by direct examination, but everything within the knowledge of the witness tending to rebut inferences from facts already elicited is admissible. p. 19.

4. CRIMINAL LAW.—*Witnesses may be cross-examined on statements concerning evidence in chief.*—Witnesses for the state who are examined generally with reference to their pursuit of defendant and conversations with him, may be asked on cross-examination about statements made by them concerning such pursuit, and refusal to permit such examination is error. p. 20.

5. CRIMINAL LAW.—*Circumstantial evidence must exclude every hypothesis of innocence.*—Circumstantial evidence in order to sustain a conviction of a criminal offense must be of a conclusive character and exclude every hypothesis of innocence of the accused. p. 20.

6. LARCENY.—*Sufficiency of evidence to sustain larceny.*—Evidence examined and held not sufficient proof to sustain a verdict of larceny. p. 21.

From Johnson Circuit Court; *Fremont Miller,* Judge.

William Floyd Henry was convicted of grand larceny, and he appeals. *Reversed.*

*Ivory J. Drybread* and *William Featheringill,* for appellant.

*U. S. Lesh,* Attorney-General, for the State.

GEMMILL, J.—Appellant was prosecuted upon an indictment charging him with grand larceny. The charge was that on July 17, 1923, in Johnson county, he did then and there unlawfully and feloniously steal, take and carry away of the personal goods and chattels of Ossie Brann, fifty chickens of the value of $40. The trial was by jury and he was found guilty of petit larceny. A motion for a new trial was overruled and judgment rendered on the verdict.

It is assigned as error that the trial court erred in overruling appellant's motion for a new trial. The motion for same contains nine separate and distinct causes. Causes numbered 1, 2, 3, 4, 5 and 6, are alleged errors of the court in excluding certain testimony therein set forth, offered on cross-examination. Cause numbered 7 is an alleged error of the court in giving to the jury of its own motion instructions numbered 1

to 16, inclusive, and in giving each of said instructions. Cause numbered 8 is that the verdict of the jury is contrary to law. And cause numbered 9 is that the verdict of the jury is not sustained by sufficient evidence. Cause numbered 7 for a new trial, which is the giving of instructions, is not urged in this appeal by reason of failure to present the alleged error.

The evidence, on behalf of the state was wholly circumstantial. From same it appears as follows:—At one o'clock on the morning of the day named in the indictment, one Ossie Brann who lived three-fourths of a mile southwest of Greenwood was awakened by the barking of her dog. She got up, went to the front door and looked south as she heard an automobile running in that direction. The automobile went south about a quarter of a mile, turned around and came back, and when it got even with her home she turned on the porch light and saw that it was a Ford roadster. She investigated and discovered that about fifty chickens owned by her of the value of $40 were gone. She notified two parties over the telephone of her loss, and she and her husband got in their automobile and went in the direction she had seen the Ford roadster go. They could see the light of an automobile in the distance but never caught up with it. Later Clarence Brann, her husband, and some neighbors inspected the automobile tracks in the road where the automobile she had seen turned around. They found that the tire on the left rear wheel made an impression that resembled the letter "H" with the long parts out; or a horseshoe or a muleshoe. The other three tires made impressions that resembled the letters, "I" and "O," one end of the letters being very dim. Said Clarence Brann and two neighbors, Sam Cutsinger and Leander Browning, the former being an officer, followed the tracks of the said automobile to a point about four miles southwest of the

Brann home and back to a cemetery one-half mile north of where Mrs. Brann lived. While the said parties were at that place on the highway about seven o'clock in the morning, the appellant drove past in a Ford roadster. He came from the direction of Greenwood which was east and went south. Noticing a similarity in the tracks made by the Ford roadster which he was driving, to the tracks which they had been investigating, they followed him for a few miles and caught up with him, when he stopped at the side of the road on account of his automobile being out of gasoline. The appellant was asked where he had been all night. He replied that he had been at Southport where he boarded, and also said he was going to Bargersville. He was told that he would have to show that he had been at Southport all night. This he agreed to do. He took Mr. Cutsinger, who was an officer, in his automobile, and the other two men followed in another automobile, and all went to Southport, where Mr. Cutsinger talked to Mrs. Decker with whom the appellant boarded, away from the appellant who did not talk to her. After that he was allowed to go and was not placed under arrest at that time. A day or so later the appellant took his automobile to a garage in Greenwood and had the left rear tire removed and another put in its place and had the car cleaned out. The party who did the work said that the appellant asked him to hide the tire or to put it away for him where no one could get it, and keep it for him; and said that in the car he found some yellow feathers, some straw and a sack. The appellant was a barber in Southport, and when seen on that morning he was coming from the direction of the place he lived. When stopped by said parties and questioned by them he was pale and nervous. Most of the stolen chickens, some dead and some alive, were found later in the day

in two sacks a short distance from the Brann residence along the side of the road. The witness who removed the tire from the appellant's automobile testified that he had seen two other cars with the same kind of tire, which was on the left rear wheel of appellant's roadster.

Appellant claims in the first cause for new trial that error of law occurred at the trial in this, that the court refused to permit the witness, Sam Cutsinger, to answer a question on cross-examination propounded to him as a witness by defendants' counsel, as to whether or not he said to Leander Browning and Clarence Brann in the presence of the defendant in Southport that Mrs. Decker said that he (the defendant) was at home all night. Causes numbered 3, 4 and 5 were alleged errors in the court refusing to permit the said witness to answer other similar questions in regard to what he might have said or the appellant might have said at that time; and cause numbered 6 is an alleged error in the court refusing to permit Leander Browning, a witness, to answer a like question as to what he might have said at that time. The state claims that there was not error in refusing to permit said witnesses to answer said questions propounded to them, as same were not proper cross-examination. It is a settled rule of practice in this state that the extent of the cross-examina-

2. tion permitted is within the sound discretion of the trial court and only an abuse of this discretion is cause for reversal on appeal. And in Ewbank, Indiana Trial Evidence §155, it is stated that in order to justify a reversal on account of the admission or exclusion of questions on cross-examination, there must have been a manifest abuse of discretion to the injury of the complaining party. Appellant insists that on the direct examination of said witness, the state entered upon the general subject of the investigation which was made by them to ascertain by whom the

crime had been committed, and that he was in their custody from the time he was apprehended by them on the Bargersville road until he was released at Southport, and that he was entitled by cross-examination to bring out every detail of what was done and said by and between said witnesses and the appellant during that period of time.

"Cross-examination is not necessarily restricted to the specific matter of examination-in-chief, but may extend to the general subject thereof. There is some apparent conflict upon this proposition and some courts are inclined to limit the cross-examination to the specific subject or phase of the general subject gone into on examination-in-chief, but the rule, as we have stated it, is supported by the weight of authority and the better reasons." Elliott, Evidence §920. "The subject matter to which the cross-examination may relate, however, is not to be given a narrow and restricted meaning, but the cross-examining party may go into any and all phases of a general subject that has been opened up by the direct examination, and can not be confined to questions upon the matters particularly brought out by the original examination." Ewbank, Indiana Trial Evidence §147. "Generally speaking, it would seem that when the direct examination opens a general subject, the cross-examination may go into any phase, and cannot be restricted to mere facts which constitute a unity." 28 R. C. L. 196. While the cross-examination of a witness must be confined to the subject opened by direct examination, this rule does not restrict such cross-examination to the specific facts developed by the direct examination; and when a subject is once entered on in the examination in chief, it is opened to a full and detailed investigation on cross-examination. *DeHaven* v. *DeHaven* (1881), 77 Ind. 236, 239; *Boyle* v. *State* (1885), 105 Ind. 469, 55 Am.

Rep. 218; *Vogel* v. *Harris* (1887), 112 Ind. 494, 496; *Louisville, etc., R. Co.* v. *Wood* (1888), 113 Ind. 544, 555; *Osburn* v. *State* (1905), 164 Ind. 262, 275; *Westfall* v. *Wait* (1905), 165 Ind. 353, 6 Ann. Cas. 788. Where facts, from which an inference unfavorable to the accused is drawn, are elicited from a witness, everything within the knowledge of the witness tending to rebut said inference is admissible on cross-examination. *State* v. *Harvey* (1906), 130 Iowa 394, 106 N. W. 938.

The general subject of the investigation made by the witnesses, Mr. Cutsinger and Mr. Browning, included their direct examination as to pursuing the appellant, conversation with him after he stopped, going with him to Southport and leaving him there. If either or both of them made any statements or did anything at the time they so left him, or if appellant made any statement to them; it was proper to show on cross-examination what was said and done at that time and place. In refusing to permit each of said questions to be answered in regard to what the witnesses or appellant said and did then and there, errors were committed, which without doubt were injurious to the appellant. We believe the court abused its discretion in making the said rulings complained of. "The cross-examination of a witness is the absolute right and not a mere privilege, and its denial on a material matter is reversible error." Underhill, Criminal Evidence (3d ed.) §353.

As heretofore stated, the evidence produced by the state and upon which it relies is entirely circumstantial. Circumstantial evidence in order to sustain a conviction of a criminal offense must be of conclusive character and must exclude every reasonable hypothesis of innocence of the accused. *Falk* v. *State* (1914), 182 Ind. 317; *Thain* v. *State* (1914), 182 Ind. 345; *Robinson* v. *State* (1919), 188 Ind. 467; *Zimmer-*

*man* v. *State* (1921), 190 Ind. 537.   This court has held that the above rule is for the guidance of the trial court, and has also held that where circumstantial evidence is such that two conflicting inferences may be reasonably drawn therefrom, one tending to prove the guilt of the accused and the other favorable to his innocence, it is not within the province of the court on appeal to determine which inference ought to control.   *Lee* v. *State* (1901), 156 Ind. 541, 546; *Howard* v. *State* (1921), 191 Ind. 232, 237; *Lee* v. *State* (1922), 191 Ind. 515, 519; *Rosenberg* v. *State* (1922), 192 Ind. 485, 488.   But a court of last resort, in passing upon the sufficiency of the evidence, where it is circumstantial, will, in case an essential link is wanting, hold the evidence insufficient. *Wrassman* v. *State* (1921), 191 Ind. 399, 402.   "If there be no evidence to support the verdict or finding, or if there be no evidence to support any fact essential to the support of the verdict or finding, such verdict or finding is an error of law which may be reviewed or corrected on appeal."   *Howard* v. *State, supra.*   To sustain a criminal charge, proof of two distinct propositions must be made:   That the act constituting the essence of the offense was done, and that it was done by the person charged.   There is no evidence and there can be no reasonable inference from the evidence in the record to sustain the charge contained in the indictment, that the appellant did steal, take and carry away the personal property therein described.   There is a total failure of evidence as to the most essential element of the crime of larceny.   The verdict is not sustained by sufficient evidence and same is contrary to law.

The judgment is reversed, with instructions to sustain appellant's motion for a new trial.